UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CJPS HEALTHCARE
SUPPLIES & EQUIPMENT,

       Plaintiff/Counter-Defendant,

vs.

                                Civil Action No.
                                12-CV-14885

                                HON. MARK A. GOLDSMITH

ANSAR MEDICAL
TECHNOLOGIES, INC.,

       Defendant/Counter-Plaintiff.
_____/

**OPINION AND ORDER DENYING MOTION TO
SET ASIDE THE DISMISSAL ORDER AND ENFORCE OR SET ASIDE
THE SETTLEMENT AGREEMENT (DKT. 75)**

### I.    INTRODUCTION

The matter is presently before the Court on Plaintiff CJPS Healthcare Supplies & Equipment's motion to set aside the dismissal order and enforce or set aside the settlement agreement (Dkt. 75). Plaintiff contends that Defendant Ansar Medical Technologies, Incorporated, has breached the settlement agreement by failing to make any payments under the agreement. Plaintiff now seeks to set aside the order of dismissal without prejudice (Dkt. 74) and asks that (i) judgment be entered in the amount of $250,000 in favor of Plaintiff and against Defendant or (ii) set the case for trial. See Mot. at 2. Defendant filed a response to the motion (Dkt. 78), and oral argument was conducted on February 12, 2014. Subsequently, the Court directed the parties to file supplemental briefs on "the applicability of Federal Rule of Civil Procedure 60(b)(6) to a dismissal without prejudice" (Dkt. 81). Each party filed a supplemental brief (Dkts. 82, 83). For the reasons that follow, the Court concludes that Plaintiff has not

1

shown, by clear and convincing evidence, that the dismissal order should be set aside under Federal Rule of Civil Procedure 60(b). Accordingly, the Court denies Plaintiff's motion.

## II. BACKGROUND

The dispute in this case arose out of a purported lease of medical monitoring equipment. In the amended complaint, Plaintiff brought claims of breach of contract and conversion (Dkt. 16). Plaintiff filed a motion for a preliminary injunction (Dkt. 17), and on August 22, 2013, the Court entered an Opinion and Order granting in part and denying in part Plaintiff's motion (Dkt. 55).[1]

On October 17, 2013, the Court conducted a settlement conference, after which the parties placed a settlement on the record (Dkt. 76). The settlement agreement provides, in pertinent part:

> The payment terms will be 150,000 dollars due on or before November 1st, 2013; 50,000 dollars due on or before November 1st, 2014 which is payment toward an extended warranty and . . . the final 50,000 dollars due on or before November 1st, 2015. In exchange for that, the parties will sign a mutual release, a dismissal of this action including the counter-claims with prejudice and the terms of the warranty will be CJPS, the plaintiff, agrees to warrant all . . . defects in workmanship and material through November 1st, 2016. If the payment on November 1st, 2014 or November 1st, 2015 are not made, the warranty ends, the warranty obligations of CJPS are excused.
>
> There would be a 10-day cure period provided to defendant. If there's no payment received, . . . CJPS would have to give notice to defendant, Ansar, and specifically the warranty is for defects that result in the blood pressure functioning of the VitalPoint Monitor, the monitor at issue here, to cease working.
> . . . .
> The warranty will be a separate document from the settlement agreement. . . . And the warranty document will . . . be a general warranty that will also include some schedule of out-of-warranty work for

---

[1] The full factual background of the case was set forth in the Court's Opinion and need not be repeated here.

> work . . . . And then the settlement agreement will say that the warranty is limited to blood pressure issues.

Tr. at 4, 11. The parties informed the Court on the record that they would be executing a written settlement agreement. Id. at 12-13.

On October 17, 2013, the Court issued an order of dismissal without prejudice (Dkt. 74), stating, "On October 17, 2013, the parties placed a settlement on the record. The Court therefore dismisses without prejudice all claims and counter-claims in this case. The parties shall have until November 15, 2013 to submit a stipulated proposed order of dismissal with prejudice." The case was then closed. The parties have not submitted a proposed order of dismissal with prejudice.

It is undisputed that to date, Defendant has made no payments under the settlement agreement. In a declaration dated February 5, 2014, Robert G. Welch, the president of Defendant, stated, "Ansar remains committed to the settlement agreement. Ansar has encountered a cash flow problem. Consequently, certain shareholders of Ansar are working to obtain a loan for several million dollars." Robert G. Welch Dec. ¶¶ 1-4 (Dkt. 80). Welch stated that "certain shareholders and affiliated entities of Ansar have arranged for a bridge loan for $900,000 to cover certain expenses until the larger loan closes in a few months. . . . Ansar planned to pay the initial settlement payment to CJPS after the bridge loan closed." Id. ¶¶ 5, 7. Welch further stated, "The date for the bridge loan closing was pushed back a few times by the bank, but the closing finally happened on December 20, 2013. Unfortunately, for various reasons, Ansar has yet to receive any moneys from the closing." Id. ¶¶ 8, 9.

Defendant also submitted a declaration by Robert B. Welch, the son of Robert G. Welch, who clarified the status of the bridge loan. Robert B. Welch Dec. ¶ 1 (Dkt. 82-2). He stated that he is the manager of 1050 East Historic Associates Limited Partnership ("East Historic") and the

3

Donna Jean Welch Family Limited Partnership (collectively referred to as the "Welch Entities"). Id. ¶¶ 2, 4. In January 2013, the Welch Entities sought a $6.2 million loan. Id. ¶ 4. "[I]n furtherance of securing the larger loan," East Historic sought a bridge loan in the amount of approximately $1.2 million, and East Historic and Ansar agreed that "the excess of the Bridge Loan after paying the [construction improvement] Contingencies would be loaned to Ansar to pay obligations like that owed to [CJPS]." Id. ¶¶ 6, 7. The bridge loan closed around December 27, 2013, in the amount of $900,000. Id. ¶ 9. Robert B. Welch did not learn until after November 1, 2013, that the loan would be in this amount. Id. ¶ 10. He stated that after contingencies and other payments, "there were no remaining proceeds from the Bridge Loan to lend to Ansar as anticipated. . . . [I]t remains the committed plan of Welch Entities to secure the additional significant financing originally sought and to loan funds to Ansar to meet its settlement agreement obligations to CJPS." Id. ¶¶ 12, 16.

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 60(b) provides:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

4

"[T]he party seeking relief under Rule 60(b) bears the burden of establishing the grounds for such relief by clear and convincing evidence." Info-Hold, Inc. v. Sound Merchandising, Inc., 538 F.3d 448, 454 (6th Cir. 2008) (citations omitted).[2]

### IV.   ANALYSIS

Plaintiff argues that the dismissal order should be set aside under (i) Rule 60(b)(3) and

---

[2] The parties do not dispute that the Rule 60(b) standard applies to Plaintiff's motion to set aside the order of dismissal without prejudice. See Pl. Br. in Support of Mot. at 3 (Dkt. 75) (seeking to set aside the dismissal order under Rule 60(b)); Def. Supp. Br. at 3-4 (Dkt. 82) (contending that the Rule 60(b) standard applies here); Pl. Supp. Br. at 6-10 (Dkt. 83) (applying the standards of Rule 60(b)(6) and 60(b)(3)).

The Court notes, however, that in the Sixth Circuit, it is not clearly settled that an order of dismissal without prejudice is a final order subject to Rule 60(b). It is true that the Sixth Circuit has held that a dismissal without prejudice of an action is a final order for appeal purposes. See In re Ferro Corp. Derivative Litig., 511 F.3d 611, 616-617 (6th Cir. 2008); Union Oil Co. v. Serv. Oil Co., Inc., 766 F.2d 224, 228 (6th Cir. 1985). Further, the Sixth Circuit has affirmed district courts' decisions on 60(b) motions for relief from a dismissal without prejudice, without reaching the issue of whether a 60(b) motion is a proper avenue for relief from a dismissal without prejudice. See Percival v. Garth, 443 F. App'x 944, 946 (6th Cir. 2011) (concluding that the appellant did not demonstrate the district court "abused its discretion in denying his Rule 60(b) motion for relief from the judgment dismissing his action, without prejudice, under the three-strikes rule"). However, the parties have not cited — and the Court is not aware of — any Sixth Circuit case expressly holding that a dismissal without prejudice is a final order for purposes of Rule 60(b).

Further, there is a plausible argument that the purpose for limiting a party's entitlement to relief from a judgment or order under Rule 60(b) — the "public policy favoring finality of judgments and termination of litigation," Info-Hold, 538 F.3d at 454 (citations and quotation marks omitted) — is not applicable to a dismissal without prejudice. Such a dismissal does not permanently terminate litigation, but represents a cessation of hostilities, which can be re-started by the filing of a new action. Moreover, in our case, it is arguable that further action was contemplated because the dismissal without prejudice order allowed for the submission of a dismissal with prejudice by November 15, 2013. Because the dismissal order did not create any true sense of finality, the importance of imposing Rule 60(b)'s high hurdle on a party seeking relief from the order is attenuated.

Nevertheless, because the parties agree that Rule 60(b) applies here, the Court will apply the Rule's strictures, and deem abandoned any argument that the Rule does not apply.

(ii) Rule 60(b)(6). The Court addresses each argument in turn, and concludes that Plaintiff has not demonstrated, by clear and convincing evidence, (i) fraud or misconduct justifying relief under Rule 60(b)(3) or (ii) exceptional and extraordinary circumstances justifying relief under Rule 60(b)(6). Accordingly, the Court will deny Plaintiff's motion to set aside the dismissal order.

### A. Rule 60(b)(3)[3]

Plaintiff argues that the dismissal order should be set aside under Rule 60(b)(3) because Defendant represented to the Court and to Plaintiff that it was solvent, and it never informed Plaintiff that it was unable to meet its payment obligation. Pl. Supp. Br. at 9 (Dkt. 83). Plaintiff contends that it relied on Defendant's representation that it was able to make payments. Id. at 9-10. Defendant maintains that at the time of the settlement agreement, and to this day, it intends to perform under the settlement agreement, and its attempts to obtain financing are evidence of that intention to perform. Def. Supp. Br. at 8 (Dkt. 82).

The Sixth Circuit has explained that a party seeking to set aside a dismissal under Rule 60(b)(3) must "show that the adverse party committed a deliberate act that adversely impacted the fairness of the relevant legal proceeding in question." Info-Hold, 538 F.3d at 455 (citation, quotation marks, and formatting omitted). For the purpose of a Rule 60(b)(3) motion,

> fraud is defined as the knowing misrepresentation of a material fact, or concealment of the same when there is a duty to disclose, done to induce another to act to his or her detriment. 'Misrepresentation' can be interpreted as an affirmative misstatement. And 'other misconduct' can be interpreted to reach

---

[3] In Plaintiff's brief in support of its motion to set aside the dismissal order (Dkt. 75), Plaintiff did not reference Rule 60(b)(3) as a ground for relief. Instead, Plaintiff referenced Rule 60(b)(6). Pl. Br. at 3. However, at oral argument, the possibility of fraud as a ground for setting aside the dismissal order was raised, and in the supplemental briefs, both parties discussed whether the Rule 60(b)(3) standard is met. Because both parties have had the opportunity to analyze the applicability of Rule 60(b)(3), the Court will consider whether Rule 60(b)(3) provides a ground for setting aside the dismissal order.

questionable behavior affecting the fairness of litigation other than statements or the failure to make statements.

Satyam Computer Servs., Ltd. v. Venture Global Engineering, LLC, 323 F. App'x 421, 429-430 (6th Cir. 2009) (citations and quotation marks omitted).

In support of its fraud claim, the only piece of evidence to which Plaintiff points is Robert G. Welch's declaration, attached to Defendant's response to Plaintiff's motion for preliminary injunction (Dkt. 24-2). In this declaration, submitted to the Court on March 18, 2013, Welch stated, "Ansar is solvent. Like most businesses, Ansar experiences cash flow issues from time to time. Ansar ceased making monthly payments after October 2012 not because of a financial inability to do so, but as a set-off for CJPS's fraud and breach of contract and warranties, which resulted from the delivery of defective monitors." Id. ¶¶ 38-40.

As an initial matter, it is not clear that Defendant's representations as to solvency constituted a "knowing misrepresentation." As the Court explained in its prior Opinion,

> The Sixth Circuit has noted that "[d]efinitions of insolvency vary." Roth Steel Tube Co. v. C.I.R., 620 F.2d 1176, 1181 (6th Cir. 1980). The UCC defines "insolvent" as "[h]aving generally ceased to pay debts in the ordinary course of business other than as a result of a bona fide dispute"; "[b]eing unable to pay debts as they become due"; or "[b]eing insolvent within the meaning of federal bankruptcy law." Mich. Comp. Laws § 440.1201(w). See also Black's Law Dictionary 867 (9th ed. 2009) (distinguishing between "balance-sheet insolvency," when a debtor's liabilities exceed its assets, and "equity insolvency," when a debtor cannot meet its obligations as they become due).
>
> In the instant case, the record contains no financial statements or other evidence that would reveal Defendant's total assets and liabilities. Without evidence of Defendant's continuing finances, the Court cannot conclude that Defendant is insolvent and would be unable to satisfy a money judgment. One payment that was bounced for insufficient funds from one account does not mean that Defendant, as a business entity, is unable to satisfy its debts.

Opinion at 12-13 (Dkt. 55). Plaintiff has not presented "clear and convincing" evidence that Defendant is insolvent under one or more of the definitions of insolvency, as opposed to being, as Welch stated, a solvent business with "cash flow issues." Further, even if Defendant's overall financial situation is presently insolvent, that does not mean Welch's assertion in his declaration was false at the time it was made, or that it was made with the intent to deceive Plaintiff. See Travelers Cas. & Sur. Co. v. Am. V. J.O.A. Construction Co., Inc., 479 F. App'x 684, 693 (6th Cir. 2012) (reviewing a Rule 60(b)(3) motion and concluding that the movant "present[ed] no evidence that would support the inference that Grylls acted . . . with the intent to deceive").

Although Plaintiff does not cite evidence aside from Welch's 2013 declaration, it argues, "[Defendant] never informed CJPS that it was insolvent and unable to meet its payment obligation. CJPS relied on Ansar's claim that it was able to make payment within two weeks of settlement." Pl. Supp. Br. at 9.[4] However, Plaintiff has not presented "clear and convincing" evidence that Defendant claimed it was able to make payment within two weeks, that Defendant knew such a claim was false, or that it was made with the intent to deceive. The Court will not infer, simply from Defendant's failure to make payments under the settlement agreement, that Defendant made fraudulent statements in the course of settlement negotiations with the intent Plaintiff would rely on them. Permitting such an inference would potentially allow any settlement agreement under which one party failed to perform to be successfully challenged on fraud grounds.

---

[4] Plaintiff attached to its initial brief a number of emails between Plaintiff's counsel and Defendant's counsel after the settlement agreement was entered on the record, regarding attempts to execute a written settlement agreement and inquiries from Plaintiff's counsel as to the status of payment. The Court, however, need not consider the statements in the emails, as they are not relevant to the issue of any claimed fraudulent statements made by Defendant in negotiations prior to the settlement agreement. Further, to the extent Plaintiff relies on the emails to support the fact that Defendant has not yet made a payment, the Court notes that it is undisputed that Defendant has not made any payments under the settlement agreement.

For these reasons, the Court concludes that Plaintiff has not shown that the dismissal order should be set aside under Rule 60(b)(3) because of fraud or misconduct.

**B. Rule 60(b)(6)**

Plaintiff argues that Defendant materially breached the settlement agreement by not making the first payment, and Plaintiff contends that the Court should set aside the dismissal order under Rule 60(b)(6). Pl. Br. in Support of Mot. at 4. Plaintiff argues that although it must establish "exceptional or extraordinary circumstances" to set aside the settlement, this does not require Plaintiff to submit a "higher quantum of proof." Pl. Supp. Br. at 6. Plaintiff contends that under Ford Motor Company v. Mustangs Unlimited, Incorporated (Ford Motor I), 487 F.3d 465 (6th Cir. 2007), a district court should set aside dismissals on a case-by-case basis after considering the merits. Id. at 7. Plaintiff argues that the fact that the dismissal order was without prejudice supports setting it aside, because denying the instant motion would "serve no purpose" other than requiring Plaintiff to file a new suit for breach of the settlement agreement. Id. at 8.

Defendant argues that there was no material breach of the settlement agreement. Def. Resp. at 2-5 (Dkt. 78). Defendant further argues that under Ford Motor I, 487 F.3d 465, a dismissal may be set aside only in highly unusual cases where exceptional and extraordinary circumstances demand relief. Def. Supp. Br. at 4-5. Defendant argues that breach, without more, does not constitute an exceptional circumstance. Id. at 6. Defendant asserts that even a several-year delay does not meet the Rule 60(b)(6) standard for setting aside a dismissal. Id. at 7-8. Defendant further asserts that it remains committed to the settlement agreement, and that it has not abandoned or repudiated the agreement. Id. at 9-10.

In Ford Motor I, 487 F.3d 465, a case on which both parties rely, the Sixth Circuit articulated the application of the Rule 60(b)(6) standard to a motion to vacate a consent judgment

9

for claimed breach of a settlement agreement. The court explained that Rule 60(b)(6) "applies only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule." Id. at 468 (citation and quotation marks omitted). "Courts must apply subsection (b)(6) only as a means to achieve substantial justice when something more than one of the grounds contained in Rule 60(b)'s first five clauses is present. The something more must include unusual and extreme situations where principles of equity *mandate* relief." Id. (citations and quotation marks omitted) (emphasis in original).[5] The court adopted the Fourth Circuit's characterization of the Sixth Circuit's prior decision in Aro Corporation v. Allied Witan Company, 531 F.2d 1368 (6th Cir. 1976):

> [A] district court has a duty to vacate a prior order of dismissal *when required in the interests of justice, not whenever a settlement agreement has been breached*. Aro, therefore, simply stands for the general rule that when considering a Rule 60(b)(6) motion, the trial judge should use his discretion to determine if the granting of such motion would further justice.

Ford Motor, 487 F.3d at 470 (quoting Harman v. Pauley, 678 F.2d 479, 481 (4th Cir. 1982)) (emphasis added by Sixth Circuit). The Ford Motor I court remanded the case for the district court to "expressly determine whether — and, if so, how — Ford's evidence establishes extraordinary or exceptional circumstances sufficient to warrant Rule 60(b)(6) relief." Id. at 470.

On remand, the district court concluded that the following specific factors constituted exceptional and extraordinary circumstances: (i) the defendant's confusion as to the operation of

---

[5] The Court notes that Plaintiff argues that Ford Motor I stands for the proposition that "relief under Rule 60(b)(6) would be granted in the unusual circumstance where relief would not be accorded under Rule 60(b)(1)-(5)." Pl. Supp. Br. at 6. To the extent Plaintiff contends that a party is entitled to relief under Rule 60(b)(6) if the party can demonstrate the existence of a circumstance not encompassed in Rule 60(b)(1)-(5), this argument lacks merit. It is not enough that a party show a circumstance or situation not covered by 60(b)(1)-(5); rather, the party must point to "exceptional or extraordinary circumstances," Ford Motor, 487 F.3d at 468 (citation and quotation marks omitted) (emphasis added), that are not encompassed within the first five clauses of Rule 60(b).

the consent judgment; (ii) the defendant's "substantial and continuing disregard for the bargain struck between the parties;" and (iii) the fact that the defendant's conduct and post-hoc excuses for non-compliance constituted "a repudiation of important terms of the Consent Agreement." Ford Motor Co. v. Mustangs Unlimited, Inc. (Ford Motor II), No. 99-cv-73933, 2007 WL 2584502, at **7-8 (E.D. Mich. Sept. 7, 2007).

The Sixth Circuit subsequently affirmed the district court's decision that extraordinary circumstances justified setting aside the consent judgment. Ford Motor Co. v. Mustangs Unlimited, Inc. (Ford Motor III), 420 F. App'x 522, 529-531 (6th Cir. 2011). The court noted that "attempted repudiation of a consent judgment constituted full justification for relief under Rule 60(b)(6)," but further noted that it was unnecessary in that case to "[d]elineat[e] the difference between repudiation and breach." Id. at 529 (citations and quotation marks omitted). The court concluded that the district court, which "offered a detailed account of its reasoning as to why the circumstances of this case were extraordinary or exceptional," did not abuse its discretion in granting the motion to vacate. Id. at 530-531.

In this case, as an initial matter, the Court concludes that Plaintiff's argument that Defendant materially breached the settlement agreement by failing to make payments, Pl. Supp. Br. at 7, does not demonstrate an entitlement to relief under Rule 60(b)(6). "A breach of a settlement agreement does not meet the exceptional-circumstances requirement of Rule 60(b)(6)." G.G. Marck & Assoc., Inc. v. North Am. Investments, Corp., 465 F. App'x 515, 517 (6th Cir. 2012) (citation and quotation marks omitted). Therefore, the Court need not reach whether Defendant's failure to pay constituted a material breach, because even if it did, such breach would not be an exceptional or extraordinary circumstance.

Further, the Court concludes that Plaintiff has not presented clear and convincing

evidence of repudiation — or of a "substantial and continuing disregard for the bargain struck" between the parties amounting to an effective repudiation of the terms of the settlement agreement — sufficient to warrant setting aside the dismissal order under Rule 60(b)(6). See Ford Motor II, 2007 WL 2584502, at *7. The district court's opinion in Ford Motor II, on which Plaintiff relies, is distinguishable; in that case, the district court pointed to evidence that the defendant affirmatively violated the consent judgment multiple times by continuing to use the plaintiff's trademarked designs, and evidence that the defendant did not appear to understand the intent of the parties in entering into the consent judgment. Id. at **5-6. Finally, the plaintiff in that case asserted that it intended to seek additional relief not specified in the consent judgment, and that it would be unable to obtain adequate relief through a "collateral proceeding to enforce the terms of the Consent Judgment." Id. at *5.

      However, the facts in the instant case are different from those in Ford Motor II. Welch, the president of Defendant, and his son have asserted in declarations that they remain committed to the settlement agreement and that they have been attempting to seek financing to pay Defendant's obligation to Plaintiff. There is no clear and convincing evidence that Defendant has refused to make a payment under the settlement agreement due to confusion as to its obligation, or that it has violated the settlement agreement out of bad faith. Without more, delay in making a payment is not sufficient to constitute an exceptional or extraordinary circumstance; indeed, there is Sixth Circuit authority supporting the proposition that one party's several-year delay in performing under a settlement agreement due to financial difficulties is not sufficient ground for relief under Rule 60(b). See Futnerick v. Sumpter Twp., 207 F.3d 305, 313 (6th Cir. 2000) (affirming the district court's denial of a motion for relief from a judgment, where the district court determined that the defendant, "due in part to its financial difficulties," did not

breach its obligations under a settlement agreement to proceed with a bond sale "as quickly as possible"). For these reasons, the Court concludes that Plaintiff has not shown by clear and convincing evidence that Defendant has repudiated the settlement agreement or "expressed a disregard for the bargain" between the parties.[6]

In addition, Plaintiff argues that exceptional and extraordinary circumstances exist here because (i) Defendant misled Plaintiff and the Court by claiming it was solvent; (ii) Defendant entered into the settlement agreement with no ability to pay; and (iii) Defendant never informed Plaintiff that Defendant's performance was contingent on obtaining financing. Pl. Supp. Br. at 7-8. The Court has already concluded, supra, that Plaintiff has not shown clear and convincing evidence that Defendant engaged or fraud or misrepresentation by asserting that it was solvent. Furthermore, Plaintiff has not cited any law, or pointed to any evidence, indicating that Defendant had a duty to disclose the fact that it was seeking financing to make payments under the settlement agreement; accordingly, the Court rejects the argument that the claimed failure to disclose constituted an exceptional circumstance. Finally, the Court concludes that Plaintiff has not demonstrated by clear and convincing evidence that Defendant had no ability to make

---

[6] Plaintiff asserts that Defendant has not shown it had a good faith basis to believe it could apply funds from the bridge loan to make a payment under the settlement agreement, and that "records submitted with Ansar's supplemental brief make clear that funds loaned for the unrelated debt had to be used for improvements to the real property securing the loan." Pl. Supp. Br. at 5. Although Plaintiff does not point to specific evidence in support of this assertion, the Court notes that the bridge loan proposed financing document, attached to Robert B. Welch's declaration, provides for a $900,000 loan, of which $300,000 would be held back to improve the subject properties, and the remainder of which would be used to "[c]lear liens, mortgages, unpaid taxes, closing costs and lender's fees" (Dkt. 82-4). Therefore, there is at least some evidence in the record that the purpose of the bridge loan was to improve the subject real property. However, there is also some evidence in the record that Defendant expected in good faith to receive funds from the bridge loan that would be put toward making the first payment to Plaintiff. See Robert G. Welch Dec. ¶¶ 5, 7; Robert B. Welch Aff. ¶¶ 4, 6, 10. The Court concludes that Plaintiff has not presented clear and convincing evidence that Defendant expressly or in bad faith disregarded the obligations of the settlement agreement.

13

payments at the time it entered into the settlement agreement, or that any such inability to pay was an exceptional circumstance; after all, the failure to pay, without more, does not constitute ground for relief under Rule 60(b)(6). See G.G. Marck, 465 F. App'x at 517.

There is another significant factor weighing against awarding relief under Rule 60(b)(6) here: Plaintiff would be able to seek the primary relief it requests — enforcement of the settlement agreement — through a collateral proceeding claiming breach of the settlement agreement.[7] Where "adequate relief is available through a separate lawsuit for breach of the settlement agreement, the court may leave the parties to that remedy and refuse to set the judgment aside." Ford Motor I, 487 F.3d at 469 (quoting 12 Moore's Federal Practice § 60.48(3)(d) (3d ed. 2000)).

---

[7] The Court notes that in Plaintiff's supplemental brief, it appears to argue that the primary relief it seeks is for the Court to set aside the settlement agreement and place the case back on the regular docket. See Pl. Supp. Br. at 10 (requesting the Court to "[P]lace the case back on the regular docket and hold a scheduling conference to set trial and pre-trial dates; or, in the alternative, . . . [a]ward CJPS damages in the amount of $250,000.00 against Ansar due to Ansar's breach of the Settlement Agreement." However, in the operative document before the Court — Plaintiff's motion — Plaintiff requests, as its primary relief, an award of damages. See Pl. Mot. at 2 (requesting that the Court "[e]nter judgment in the amount of $250,000.00 in favor of CJPS and against Ansar; or, in the alternative, . . . [p]lace the case back on the regular docket and hold a scheduling conference to set trial and pre-trial dates"). Regardless of the specific relief Plaintiff seeks, Plaintiff agrees that if this Court denies its motion to set aside the dismissal order, "CJPS can simply file a new action asserting the same claim." Pl. Supp. Br. at 8. Plaintiff does not squarely argue that it would unable to obtain adequate relief via such a collateral proceeding.

Plaintiff does, however, argue that "[t]he court should not allow Ansar to extract an enormous concession with no ability to pay its agreed amount, and then benefit from its duplicity by having its potential damages capped at the reduced settlement amount." Pl. Supp. Br. at 8. However, Plaintiff's argument — which would seem to espouse vacating, rather than enforcing, settlement agreements whenever they are breached — runs counter to established public policy. As the Sixth Circuit has explained, "settlement agreements should be upheld whenever equitable and policy considerations so permit. The district court may vacate a settlement agreement <u>only when required in the interests of justice, not whenever a settlement agreement has been breached</u>." G.G. Marck, 465 F. App'x at 517 (citations and quotation marks omitted) (emphasis in original).

14

The Court concludes that under the heavy burden of Rule 60(b)(6), Plaintiff has not shown an entitlement to relief from the dismissal order. See G.G. Mark, 465 F. App'x at 518 ("As intimated by the requirement that relief in this setting be granted only in 'extraordinary' and 'exceptional' circumstances, Rule 60(b)(6) is a recourse of last, not first, resort.").[8]

## V.    CONCLUSION

For the reasons stated above, the Court denies Plaintiff's motion (Dkt. 75).

SO ORDERED.

Dated: July 28, 2014                                    s/Mark A. Goldsmith
     Flint, Michigan                                   MARK A. GOLDSMITH
                                                                  United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 28, 2014.

                                                                           s/Deborah J. Goltz
                                                                           DEBORAH J. GOLTZ
                                                                           Case Manager

---

[8] Because the Court concludes that setting aside the dismissal order is not warranted, the Court need not reach the parties' arguments as to whether there was a material breach of the settlement agreement, and, if so, what the appropriate relief would be. Such issues may be addressed in a new proceeding, if filed.